NO. 07-07-0281-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 30, 2008
_____

JOHNNY LLAMAS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 187TH DISTRICT COURT OF BEXAR COUNTY;

NO. 2006CR8798A; HONORABLE RAYMOND ANGELINI, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Johnny Llamas, was convicted of the offense of capital murder and punishment was assessed at imprisonment for life in the Institutional Division of the Texas Department of Criminal Justice. Appellant appeals the trial court's judgment and we affirm.

Factual and Procedural Background

On May 23, 2006, two men entered the Road Runner Food Market in San Antonio, Texas. On duty at the counter of the market was Sundeep (Sunny) Singh. There was

another employee at the store, Gilbert Arechiga, who was in the back of the store restocking the cooler. The market was equipped with a number of video cameras and these cameras captured what occurred when the two would-be robbers entered the store. Upon entry, one of the robbers, subsequently identified as appellant, brandished a shotgun. Immediately after entering the store, appellant shot the cash register. While appellant pointed the shotgun at the clerk, the second robber went around the counter toward the cash register. As the second robber approached the cash register, the victim produced a can of pepper spray and began spraying the robber. The victim then reached for a baseball bat and, at this time, the fatal shot was fired. From the back of the store, Arechiga heard "it's a robbery" followed by a shotgun blast. A few seconds later, there was another shotgun blast. Arechiga immediately called 911 on his cell phone. Arechiga stayed in the cooler for five to ten minutes before coming out. Upon going to the front of the store, he found Sunny dead.

Upon arriving at the scene, the San Antonio Police Department (SAPD) officers found an expended shotgun shell and noticed that the air contained a heavy scent of pepper spray. Arechiga confirmed that Sunny always carried pepper spray. An empty can of pepper spray was found behind the counter, close to the victim. The police obtained the cooperation of the market's owner in retrieving the surveillance camera's footage of the events that night. After viewing the scenes on the hard drive of the computer, the police were able to determine the general description of the assailants and what they were wearing at the time of the murder. The video was transferred from the hard drive to a CD Rom that was taken into custody by the police. Police technicians later transferred the

2

video from the CD Rom to a DVD disc. This DVD was introduced at trial and played for the jury. While processing the scene, the police noted that no money had been taken from the cash register and, further, that Sunny's wallet containing $270 had not been disturbed.

The following day, additional crime scene technicians and a police officer located various pieces of clothing and a pair of latex gloves in an area close to the market. The items found generally matched the description of the clothing worn by the robbers. All of this material was ultimately submitted for DNA testing.

The SAPD detective in charge of the investigation received a tip that Sharon Borrego had information regarding the identity of one of the suspects. This information led to the arrest of appellant and another individual, Jacob SanMiguel. After obtaining a search warrant, buccal swabs were taken from both appellant and SanMiguel. These swabs were also submitted for DNA testing.

The DNA testing revealed that blood stains found on the various articles of clothing found near the market were consistent with the DNA of the victim. Further, the testing revealed that the buccal swab DNA for appellant was consistent with DNA found on one of the pieces of clothing found near the scene.

After a jury had been selected, appellant filed a motion to discharge his appointed counsel. The record reveals that the motion was filed with the district clerk on the Friday before testimony was to begin on Monday. On Monday, the trial began and the issue of appellant's motion was never brought to the trial court's attention.

At trial, the State produced the testimony of another inmate who testified that appellant had admitted shooting the victim during the robbery. Further, Sharon Borrego testified that, on the night of the robbery, she was living with appellant. Her testimony was that appellant left with a shotgun on the night in question in the company of SanMiguel. When appellant returned home, he was extremely agitated and admitted to having killed the victim.

The jury convicted appellant and, at the punishment hearing, answered the special issues in the affirmative. The result was that appellant was sentenced to life imprisonment without parole.

By five issues, appellant challenges the judgment of the trial court. Appellant asserts that the trial court committed reversible error in: 1) failing to grant the request of appellant for a change of appointed counsel, 2) failing to instruct the jury on the lesser included offense of murder, 3) admitting "gruesome" photographs into evidence, 4) allowing a witness to read from a document not admitted into evidence, and 5) admitting the DVD into evidence without a proper chain of custody. Disagreeing with appellant, we will affirm the judgment.

## Appointed Counsel

By his first point of error, appellant contends that the failure of the trial court to grant appellant's request to replace appointed counsel with another appointed counsel was reversible error. At the outset, we note that this is a capital murder case and the jury was selected by individual voir dire. Appellant was appointed two attorneys to represent him

4

on July 25, 2006. Jury selection began on April 20, 2007, and concluded with the selection of the final juror on May 9, 2007. On May 11, 2007, after the jury had been selected, but before they were sworn, appellant filed a *pro se* motion attempting to discharge his appointed attorneys. This motion was filed with the Bexar County District Clerk. There was no order setting the motion for hearing. In fact, the record reflects that when the court convened on the following Monday, May 14, 2007, appellant said nothing to the trial court about the motion.

We can find no support in the record for the proposition that the motion to dismiss appointed counsel was ever brought to the trial court's attention. This is fatal to appellant's position for two reasons. First, the trial court was denied the opportunity to rule on the motion. As such, the same has not been preserved for appeal. See TEX. R. APP. P. 33.1(a)(1). Second, when applied to a request to dismiss appointed counsel, the law requires that the trial court be informed of the motion in a timely manner. See Malcom v. State, 628 S.W.2d 790, 791 (Tex.Crim.App. 1982). The record fails to show that the motion was ever brought to the attention of the trial court. Accordingly, we overrule appellant's first issue.

## Lesser Included Offense

Appellant's second issue complains about the trial court's refusal to give a lesser included charge on the offense of murder. Counsel for appellant requested such a charge at the charge conference, but the trial court denied the request. Appellant was indicted for capital murder that alleged appellant did intentionally cause the death of Sundeep Singh

5

by shooting him with a deadly weapon, a firearm, while appellant was in the course of committing or attempting to commit the offense of robbery. From a review of appellant's second issue, it is apparent that appellant is contending that, since the evidence did not show that any money was taken in the robbery, the jury should have been allowed to determine if the appellant was guilty of only murder and not capital murder.[1]

When we review an allegation that the trial court erred in failing to give a requested lesser included offense charge, we must engage in a two part analysis. Hall v. State, 225 S.W.3d 524, 535 (Tex.Crim.App. 2007). The first part of the analysis is a question of law, where we compare the elements of the offense as alleged in the indictment with the elements of the potential lesser included offense. Id. In the case before the Court, all parties have agreed that the requested lesser included offense, murder, is a lesser included offense under the capital murder statute, as indicted. See TEX. CODE CRIM. PROC. ANN. § 37.09(1) (Vernon 2006).[2] The second step in the analysis requires that we review the evidence to ascertain if there is some evidence in the record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser included offense. Hall, 225 S.W.3d at 536 (citing Bignall v. State, 887 S.W.2d 21, 23 (Tex.Crim.App.1994)). This second step is the question for us to decide.

---

[1] Appellant's brief does not argue for the lesser included offense of robbery, which was also requested by trial counsel, and we do not address that issue.

[2] An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; . . . .

First, appellant's argument is centered on the fact that no money was taken from the cash register or the deceased. Accordingly, appellant posits that this was not a murder committed during the course of committing robbery. This analysis does not consider that the indictment charged murder in the course of committing **or attempting to commit** robbery. The fact that no money was taken does not equate to proof that, if the appellant was guilty, he was guilty of only the lesser included offense. We must look to the statute involved to properly analyze appellant's argument. The elements of robbery, as applicable here, are:

> (a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:
>
> (1) intentionally, knowingly, or recklessly causes bodily injury to another;

TEX. PENAL CODE ANN. § 29.02(a)(1) (Vernon 2006).[3] Furthermore, "in the course of committing theft" is defined as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." § 29.01(1). Courts in Texas have long recognized that the actual commission of the offense of theft is not a prerequisite to the commission of the offense of robbery. See Robinson v. State, 596 S.W.2d 130, 134 (Tex.Crim.App. 1980); Douglas v. State, No. 04-04-00059-CR, 2005 Tex.App. LEXIS 6063, at *6, (Tex.App.–San Antonio, August 3, 2005, pet. ref'd) (not designated for publication). This is so because the State is not required to show a completed theft to establish the *corpus delicti* of robbery. See Purser v. State, 902 S.W.2d

---

[3] Further references to the Texas Penal Code will be by reference to "§ ___."

7

641, 647 (Tex.App.–El Paso 1995, pet. ref'd).  See also Jefferson v. State, 144 S.W.3d 612, 613-14 (Tex.App.–Amarillo 2004, no pet.).  What we conclude from these cases is that the failure to prove a completed theft does not, in and of itself, entitle appellant to a lesser included charge of murder.

However, we must also review the evidence to determine if there is more than a scintilla of evidence that would allow a rational jury to conclude that, if appellant is guilty, he is guilty of only the lesser included offense.  Bignall, 887 S.W.2d at 23.  The record clearly shows that, upon entering the market, appellant brandished a shotgun.  The other employee heard someone say, "it's a robbery."  The DVD showed appellant fire the shotgun before the deceased took any type of defensive or protective steps.  The DVD also showed the other perpetrator, SanMiguel, go behind the counter and approach the cash register.  Further, the jury heard, on the DVD, appellant say "get the money, Jake."  The State produced another inmate who testified that appellant told him, "I smoked the fool.  He wouldn't give me the money, so I smoked him."  Finally, appellant's girlfriend told the jury that, on the night after the murder, appellant told her he shot the victim because "he wouldn't give me the money."

Appellant can only direct this Court to State's counsel's opening statement and the girlfriend's testimony regarding appellant's agitated state upon arriving home to show that there is a scintilla of evidence to support the requested lesser included offense charge.  However, the State's opening statement is not evidence.  The girlfriend's testimony was

8

that appellant was "panicky and just like he was on ice."[4]   Contrary to appellant's interpretation of this testimony, it was merely descriptive of appellant's demeanor and was not evidence that appellant was, in fact, on drugs.  Further, even had he been on drugs, his intoxication would not negate any culpable mental state.  See § 8.04

Based upon this record, we must conclude that the evidence appellant says entitles him to a lesser included charge does not rise to even a scintilla of evidence that would allow a rational jury to conclude appellant was guilty of only the lesser requested charge. Hall, 225 S.W.3d at 536.  Accordingly, we overrule appellant's second issue.

## Photograph

Appellant's next issue complains of the trial court's admission into evidence of a certain photograph of the deceased that was taken at the scene of the crime.  As the complaint relates to a decision of the trial court to admit evidence, we review that decision under an abuse of discretion standard.  See Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000).  An appellate court should affirm the trial court's ruling unless it finds that the decision is not within the zone of reasonable disagreement.  See Green v. State, 934 S.W.2d 92, 102 (Tex.Crim.App. 1996).  Stated another way, we will find an abuse of discretion only when the trial court acted without reference to any guiding rules or principles by acting arbitrarily or unreasonably.  See Lyles v. State, 850 S.W.2d 497, 502 (Tex.Crim.App. 1993).  That a photograph is generally admissible if verbal testimony about the matters depicted therein is also admissible is a well known legal maxim.  See Gallo v.

---

[4] "Ice" is a slang term for methamphetamine.

State, 239 S.W.3d 757, 762 (Tex.Crim.App. 2007) (citing Williams v. State, 958 S.W.2d 186, 195 (Tex.Crim.App. 1997)). In determining whether the probative value of a photograph is outweighed by the inflammatory nature of the photograph, the court may consider the following, non-exhaustive, list: 1) the number of exhibits offered, 2) their gruesomeness, 3) their detail, 4) their size, 5) whether they are black and white or color, 6) whether they are close-up, and 7) whether the body depicted is naked or clothed. Id. A trial court does not commit reversible error simply because it admits a photograph into evidence that is of a gruesome nature. Sonnier v. State, 913 S.W.2d 511, 519 (Tex.Crim.App. 1995).

The photograph at issue is marked as State's Exhibit 5 and is a color photograph depicting the lower body of the decedent with blood on the floor around the body. Appellant posits that the photograph's probative value was far outweighed by its inflammatory nature. The photograph at issue is a color photograph taken at the scene of the crime by an SAPD officer. The first officer on the scene testified that the photograph was an accurate depiction of the scene as he found it. The color photograph is five inches by eight inches in size. It depicts the victim fully clothed and is taken from several feet away, therefore, it is not a close up. It does not show the wound and depicts only the lower torso. There is considerable blood splattering shown, but the exact injuries of the victim are not seen in the photo. There were a total of 13 photographs of the scene admitted into evidence and this was the only one that showed the victim. This photograph does nothing more than portray the scene of the crime as it was found by the police. The trial court correctly applied the relevant case law in determining whether to admit the photograph into

10

evidence. <u>Gallo</u>, 239 S.W.3d at 762. Accordingly, we cannot say that the trial court abused its discretion by admitting the photograph into evidence. <u>Weatherred</u>, 15 S.W.3d at 542. Appellant's third issue is overruled.

## Reading From Exhibit

Appellant's fourth issue contends that the trial court erred in allowing a witness to read from an exhibit that was not introduced into evidence. Appellant's contention is that the trial court allowed the testimony in violation of rules 612 and 803(5) of the Texas Rules of Evidence. <u>See</u> TEX. R. EVID. 612, 803(5). Rule 612 deals with the use of a writing to refresh a witness's memory. Rule 803(5) is an exception to hearsay when a witness uses a recorded recollection to refresh his memory.

As the complaint relates to a decision of the trial court to admit evidence, we review that decision under the same abuse of discretion standard detailed above. <u>See</u> <u>Weatherred</u>, 15 S.W.3d at 542. However, we note that the complaint on appeal must comport with the objection lodged at trial. <u>See</u> <u>Burks v. State</u>, 876 S.W.2d 877, 908 (Tex.Crim.App. 1994) (<u>citing</u> <u>Rezac v. State</u>, 782 S.W.2d 869, 870 (Tex.Crim.App. 1990)).

During the trial, the witness in question, Officer Lazcano, testified regarding video cameras located at the scene of the crime. Lazcano was shown two State's exhibits, Nos. 24 and 25, and was asked, regarding State's No. 24,

> Q. Now I'd like to direct your attention to State's Exhibit Number 24. Does this appear to be the DVD – or the CDR, I should say, that was taken into custody by Detective Petrowski from Ashwoin Gajera?

A. Yes, ma'am.

Appellant's counsel then interposed the following objection.

> Judge, I'm going to object if she's going to read from anything, from a device
> or something that hasn't been introduced into evidence.

The court overruled the objection. The witness was then asked another question regarding State's Exhibit No. 24 and counsel for appellant lodged the same objection. The trial court again overruled the objection. It is clear from the questioning of the witness that the State was not trying to refresh the memory of the witness. It is also clear from the objection that appellant was not objecting to the testimony on the basis of hearsay.

The sole basis of the objection, as voiced to the trial court, was that the witness was testifying to matters contained on the exhibit and the exhibit had not been introduced into evidence. The issue raised in appellant's brief is not the same as the objection lodged at trial. Therefore, we find that the alleged error was not preserved for review. Id. We note that, even if we construed the issue on appeal to deal with the officer testifying from an exhibit not introduced at trial, the objection was not timely made. A previous witness, Ashwoin Gajera, had testified to the same facts without objection; therefore, the appellant has waived any error by failing to object when the testimony was first introduced. See Stoker v. State, 788 S.W.2d 1, 12 (Tex.Crim.App. 1989). Appellant's fourth issue is overruled.

## Chain of Custody of the DVD

In his final issue, appellant posits that the trial court committed reversible error when it allowed the introduction of the DVD of the surveillance video into evidence without the establishment of a proper chain of custody. As in the two previous issues, we are dealing with the trial court's decision to admit evidence. Thus, we refer the parties to the standard of review set forth under appellant's third issue.

The trial record shows that Ashwoin Gajera testified that he maintained the surveillance cameras at the market in question. On the night of the murder, he went to the market at the behest of the owner and reviewed the surveillance videos captured on the hard drive of the computer with the police. He further testified that he made a CD Rom of the images and gave it to the police. The police officer with the technical surveillance unit of the SAPD, Officer Lazcano, testified that he viewed the CD Rom and transferred the data to a DVD. It is this DVD, that was marked as State's Exhibit No. 26, that is in issue. Lazcano testified that the images on the DVD had not been altered in any manner and that they were exact copies of the images captured on the hard drive of the market's computer. The record further reflects that the officer, who initially took possession of the CD Rom, did not testify. It is this gap in the chain of custody that appellant's issue attacks.

The Texas Rules of Evidence provide that physical evidence requires sufficient authentication to support a finding that the exhibit in issue is what the proponent claims it to be. See TEX. R. EVID. 901(a). This has been interpreted to mean that Rule 901 requires only a showing satisfying the trial court that the matter in question is what its proponent

13

claims. See Silva v. State, 989 S.W.2d 64, 67-68 (Tex.App.–San Antonio 1998, pet. ref'd). Such evidence is to be received if the trial court finds that a reasonable juror could find that the evidence was authenticated. Pondexter v. State, 942 S.W.2d 577, 586 (Tex.Crim.App. 1996). See also Martinez v. State, No. 04-07-00147-CR, 2007 Tex.App. LEXIS 9830, at *4 (Tex.App.–San Antonio December 19, 2007, no pet.) (not designated for publication). Proof of the beginning and end of the chain of custody will support admission of an object barring any evidence of tampering or alteration. See Maranda v. State, 253 S.W.3d 762, 770 (Tex.App.–Amarillo 2007, pet. dism'd) (citing Stoker, 788 S.W.2d at 10). Without any evidence of tampering, questions concerning care and custody of the object go to the weight to be attached to the evidence and not to its admissibility. See Lagrone v. State, 942 S.W.2d 602, 617 (Tex.Crim.App. 1997). The trial court has the discretion to determine the sufficiency of the evidentiary predicate. Maranda, 253 S.W.3d at 770.

Under the facts of this case, the trial court heard the testimony regarding how the data came to be captured on the hard drive of the computer at the market. Further, the testimony demonstrated how that data was transferred from the hard drive to the CD Rom and when and how the police took possession of the CD Rom. Finally, the State offered the testimony of the officer in charge of transferring the data to the DVD at issue, who testified that the DVD was an exact copy of the data contained on the CD Rom. From these facts, we are left with the conclusion that the trial court determined that the State had met the evidentiary predicate to admit the DVD. We cannot say that the trial court's decision abused its discretion. Weatherred, 15 S.W.3d at 542. Therefore, we overrule appellant's fifth issue.

14

Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice


Publish.