

IN THE
TENTH COURT OF APPEALS

No. 10-13-00282-CR

WAYLON CHAZ STANDMIRE,

                                                Appellant

 v.

THE STATE OF TEXAS,

                                                Appellee

From the 40th District Court
Ellis County, Texas
Trial Court No. 37387CR

## O P I N I O N

Waylon Chaz Standmire was convicted of aggravated assault with a deadly weapon.  TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).  Standmire approached a fellow inmate in the Ellis County Jail who was sleeping and sliced the inmate's face with an object.  Standmire was sentenced to 15 years in prison.  Because the trial court erred in assessing attorney's fees, the assessment of attorney's fees is deleted from the judgment; and trial court's judgment is affirmed as modified.

**SUFFICIENT EVIDENCE OF A DEADLY WEAPON**

We first discuss Standmire's second issue, the sufficiency of the evidence. In it, he contends the evidence is insufficient to prove that he used "a razor, shank, or another sharp bladed instrument" as alleged in the indictment and that any such object was a deadly weapon.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted.[1] *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting

---

[1] While the consideration of improperly admitted evidence may seem odd, the sufficiency of the evidence is a different issue than its admission. The propriety of the admission of evidence is considered separately and the result of its erroneous admission results in its own harm analysis. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

### *Deadly Weapon*

A person commits the offense of aggravated assault if he uses or exhibits a deadly weapon during the commission of an assault. TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). What constitutes a "deadly weapon" is determined by section 1.07 of the Texas Penal Code. *Robertson v. State*, 163 S.W.3d 730, 732 (Tex. Crim. App. 2005). In the context of this appeal, a deadly weapon includes anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN § 1.07(a)(17)(B) (West 2011) (emphasis added). "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id*. § 1.07(a)(46). The plain language of the statute does

not require the actor to actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Expert or lay testimony may be sufficient to support a deadly-weapon finding, and police officers can be expert witnesses with respect to whether a deadly weapon was used. *Tucker v. State*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008).

*Evidence*

Detention Officer Benjamin Parten testified that Standmire approached Parten's observation window of the "P tank," which Parten was assigned to observe, and stuck a note on it. After reading the note, Parten noticed something was wrong in the tank, entered the tank, and approached jail inmate Aaron Fedrick who was holding his face. Fedrick was upset, pointed to Standmire, and said that Standmire had just cut him with a razor blade. Razors are regularly provided to the jail inmates between 4 and 6 a.m. so that they may shave if they wish. Standmire admitted to Detention Officer Rusty Hinkle that he had assaulted Fedrick.

Standmire was removed from the tank and strip searched. The only weapon found on him was a sock with a bar of soap in it which could be used to assault someone.[2] "P tank" was also searched but no razor or other weapon was found. However, Hinkle testified there was no way a toilet could be searched if something had

---

[2] Standmire was seen in the video putting the bar of soap in the sock and twirling it around after he had assaulted Fedrick as if in anticipation of retaliation.

been flushed down it. Further, Standmire could be seen in the video heading for the bathroom area after he sliced Fedrick and before he returned to the bunk area and put the bar of soap in the sock.

A licensed vocational nurse, Lisa Nelson, was called to the tank to tend to Fedrick. She tried to control the bleeding from Fedrick's face, but could not. She asked the detention officers to take Fedrick to the medical room where Nelson briefly controlled the bleeding enough to look at Fedrick's wounds. Nelson saw that Fedrick had a small laceration at his eyebrow and a very large and deep laceration from the corner of his mouth and down his chin. When the laceration was pulled open, Nelson could see through it to the inside of Fedrick's mouth, revealing teeth and gums. Fedrick was then sent to the hospital. Nelson said the laceration appeared to be made by a sharp-bladed instrument and agreed that the wound could not be made with anything other than something that was fairly sharp.

Parten and Nelson each testified that anything that could make that kind of wound would be capable of causing serious bodily injury or death. Prior to drawing that conclusion, Parten noted that the weapon cut Fedrick's eye brow, just missed Fedrick's eye, cut his nose, and cut deeply into Fedrick's chin and through his mouth. Nelson based her conclusion on the depth of the laceration to Fedrick's chin. The jury was shown photos of various angles of Fedrick's face after being stitched up at the hospital. The photos show several large stitches through Fedrick's right eyebrow, a thin

cut, not stitched, alongside his nose, and a long line of stitches starting at the right portion of his upper lip, angling toward the right corner of his mouth and down to his chin. The jury also saw video recorded by Parten's lapel camera of the large amount of blood lost by Fedrick as a result of the assault.

After reviewing the record, we conclude a rational jury could have found, beyond a reasonable doubt, that Standmire used a razor, shank, or another sharp bladed instrument as alleged in the indictment and that the object used was a deadly weapon. Standmire's second issue is overruled.

**CHARGE ERROR**

In his third issue, Standmire contends the trial court erroneously omitted the definition of deadly weapon in the application paragraph,[3] lessening the State's burden of proof and creating a presumption in the minds of the jurors that a "razor, shank, or another sharp bladed instrument" was a deadly weapon. Standmire argues that a correct application paragraph would have included the appropriate statutory definition of deadly weapon, in this case that in the manner of its use or intended use is capable of causing death or serious bodily injury, or at least made a reference to the definition given in the abstract portion of the charge.

A trial court is required to fully instruct the jury on the law applicable to the case and to apply that law to the facts presented. *Gray v. State*, 152 S.W.3d 125, 127 (Tex.

---

[3] The definition was contained in the abstract portion of the court's charge.

Crim. App. 2004). The meaning of a jury instruction must be taken from the whole charge, and jurors are not authorized to return a verdict except under those conditions given by the application paragraph of the charge. *Delapaz v. State*, 228 S.W.3d 183, 212 (Tex. App.—Dallas 2007, pet. ref'd). Although a jury charge is adequate if it either contains an application paragraph specifying all of the conditions to be met before a conviction under such theory is authorized, or contains an application paragraph authorizing a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers, or contains some logically consistent combination of such paragraphs, *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)), it is not enough for the charge to merely incorporate the allegation in the charging instrument. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004). Instead, it must also apply the law to the facts adduced at trial. This is because the jury must be instructed under what circumstances they should convict, or under what circumstances they should acquit. *Id*. at 127-128. Jury charges which fail to apply the law to the facts adduced at trial are erroneous. *Id*. at 128.

Here, the trial court gave the appropriate definition of deadly weapon in the abstract portion of the charge as it related to the types of weapons alleged in the indictment. However, the trial court merely repeated the allegation in the charging instrument in the application paragraph but did not define or make specific reference to

the definition of "deadly weapon" which was contained in the abstract paragraph.[4] By doing so, the trial court effectively instructed the jury that a "razor, shank, or another sharp bladed instrument" was a deadly weapon and thus lessened the State's burden to prove that whatever object was used by Standmire was a deadly weapon.[5] Thus, the trial court erred.

Standmire, however, did not object to the charge. Unobjected-to jury charge error will not result in reversal of a conviction in the absence of "egregious harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218

---

[4] The application paragraph provides, in full:

> "Now, if you find from the evidence beyond a reasonable doubt that on or about October 24, 2012, in Ellis County, Texas, the defendant, WAYLON CHAZ STANDMIRE, did then and there intentionally or knowingly or recklessly cause bodily injury to Aaron Keith Fedrick, by cutting him with a razor, a shank, or another sharp bladed instrument, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a razor, a shank, or another sharp bladed instrument, as alleged in the Indictment, then you will find the defendant guilty of Aggravated Assault with a Deadly Weapon as charged in the Indictment."

[5] We note that both the First Court of Appeals and the Fourteenth Court of Appeals have held that an application paragraph such as this one is not erroneous. *See Williamson v. State*, 356 S.W.3d 1, 28 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Francis v. State*, 746 S.W.2d 276, 278 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). We disagree with those courts' determinations.

S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

As we previously stated, the abstract portion of the charge properly defined a deadly weapon as it related to the case. On the very next page was the application paragraph. Also, it was clear from the evidence that Standmire used a sharpened object to slice Fedrick and that, because of the extent of the resulting injury, the manner of its use or intended use was capable of causing death or serious bodily injury. Further, both parties argued to the jury that the State had the burden to prove a deadly weapon. Both parties also argued whether the State met its burden of proof by proving beyond a reasonable doubt that the unlocated object used in the assault was a deadly weapon.

Based on an evaluation of the record, we determine Standmire was not egregiously harmed by the trial court's error. Standmire's third issue is overruled.

**OBJECTION TO VIDEO EVIDENCE**

Standmire's first issue is that the trial court erred in admitting the video recording from the jail surveillance camera because the sponsoring witness for the exhibit did not have sufficient knowledge to authenticate the exhibit. Specifically, Standmire argues that because the detention officer sponsoring the exhibit did not see the assault take place and because he could not show the recording process accurately produced the resulting video, no one with personal knowledge could testify that the

images on the exhibit were an accurate portrayal of what occurred. *See* TEX. R. EVID. 901.

An appellate court may not disturb a trial court's evidentiary rulings absent an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). As long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld. *Id*. (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (en banc) (op. on reh'g)). Texas Rule of Evidence 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. APP. P. 901(a). Rule 901(b) provides illustrations of authentication complying with the rule; for instance, testimony by a witness with knowledge that the matter is what it is claimed to be is an acceptable method of authentication. *Id*. (b)(1); *Wood v. State*, 18 S.W.3d 642, 647 (Tex. Crim. App. 2000). *See also Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). The rule requires only a showing satisfying the trial court that the matter in question is what its proponent claims. *Llamas v. State*, 270 S.W.3d 274, 281 (Tex.App.—Amarillo 2008, no pet.).

*Preservation*

We first address the State's argument that the objection made at trial does not comport with the issue raised on appeal. To preserve a complaint for appellate review,

the record must show that the complaint was made to the trial court by a timely request, objection or motion that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint unless the grounds were apparent from the context. TEX. R. APP. P. 33.1(a). A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial. *See* TEX. R. APP. P. 33.1; *Lovill v. State*, 319 S.W.3d 687, 691-692 (Tex. Crim. App. 2009).

When the exhibit was first offered into evidence, Detention Officer Benjamin Parten, the officer who noticed something wrong in the "P tank" and who entered to find an inmate, Aaron Fedrick, holding his bleeding face, testified that he watched the video of the two camera views of the tank and that it was a fair and accurate representation of the events that occurred that day. Standmire first objected by pointing out that the "proper foundation and proper questions haven't been asked or answered for admission" of the exhibit. The objection was sustained.

The State then asked Parten if the exhibit was made on a device that accurately records events that the camera "sees," whether the operator was competent, and whether the video had been tampered with in any way. Parten responded affirmatively to the first two questions by the State and negatively to the third question.

Standmire again objected and questioned Parten on voir dire where Parten acknowledged that he did not personally operate the equipment that made the video, did not have access to the equipment, and did not take part in the transferring of the

images to the DVD. Standmire then objected, stating "this particular witness does not have the experience…or practical involvement with the creation of this document, and, therefore, he's not qualified to sponsor it." The State responded that the video was essentially a sequence of photographs and that Parten had testified the video was a fair and accurate representation of the events depicted. After Parten confirmed for the trial court that he watched the video, the trial court overruled Standmire's objection and admitted the video into evidence.

After reviewing the record, while it is a close call, we believe the trial court understood the basis of the objection, that being the video exhibit was not properly authenticated by the sponsoring witness, which is the same issue on appeal. Thus, we find the objection made at trial comports with the issue raised on appeal and overrule the State's preservation and presentation argument.

*Authentication*

There are at least two ways, if not more, to authenticate photographic evidence including videos. The most common is by testimony that the photo or video is an accurate representation of the object or scene in question. *See Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988). In this situation, the sponsoring witness is not required to be the person who operated the camera or video equipment. *Id*. Another slightly less common but equally permissible way is by testimony that the process or system that produced the photo or video is reliable. *See Reavis v. State*, 84 S.W.3d 716,

720 (Tex. App.—Fort Worth 2002, no pet.). Reliability of the system or process is most often used when there is no witness that was present at the scene or event depicted in the photograph or video. This is common with security videos; such as those used after hours in convenience stores and freestanding automatic teller machines. For authentication of such photographic or video evidence, the sponsoring witness usually 1) describes the type of system used for recording and whether it was working properly; 2) testifies whether he reviewed the video or photos; 3) testifies whether he removed the video or device that stores the photos; and 4) testifies whether the video or photos have been altered or tampered with.[6] *See id.*; *see also Randell v. State*, No. 07-11-00493-CR, 2013 Tex. App. LEXIS 742, *5-7 (Tex. App.—Amarillo Jan. 25, 2013, pet. ref'd); *Warren v. State*, No. 08-11-00029-CR, 2012 Tex. App. LEXIS 1544, * 3 (Tex. App.—El Paso Feb. 29, 2012, no pet.) (not designated for publication). But if the sponsoring witness was present when the photographs or video were taken or has personal knowledge of what the photographs or video depict, it is unnecessary for the sponsoring witness to also testify regarding the reliability of the system. *See* TEX. R. EVID. 901.

In this instance, Parten was present and is, in fact, shown in the video. He certainly was able to testify whether the video was an accurate portrayal of the events depicted. While he may not have seen the event depicted at the beginning of the video

---

[6] Any notion that this type of evidence is always required for authentication of video or audio recordings has clearly been rejected by the Court of Criminal Appeals. *See Angleton v. State*, 971 S.W.2d 65, 68 (Tex. Crim. App. 1998).

of Standmire's contact with Fedrick while Fedrick was lying on his bunk, Parten did personally witness the events depicted only seconds later and then appeared on the video himself.

Parten's testimony was certainly sufficient to authenticate the video. Because the admission of the exhibit was based on Parten's personal knowledge of the facts depicted in the video, it was unnecessary for the State to authenticate the video by any other means or methods such as proving the reliability of the system or process. Accordingly, the trial court did not abuse its discretion in admitting the video over Standmire's objection; and Standmire's first issue is overruled.

**ATTORNEY'S FEES**

In his fourth issue, Standmire contends that the evidence is insufficient to permit the trial court to assess court appointed attorney's fees. The State concedes that the evidence is insufficient in this regard. In accordance with the opinion of the Court of Criminal Appeals in *Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010), we agree that the evidence was insufficient and the judgment should be modified to delete this assessment. Standmire's fourth issue is sustained.

**CONCLUSION**

The evidence was insufficient for the trial court to have assessed attorney's fees in the judgment, therefore, that assessment is deleted and the judgment is modified to show that the amount of costs owed by Standmire is $274.00 for court costs and no

attorney's fees. Having found no other reversible error, we affirm the trial court's judgment as modified.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed as modified
Opinion delivered and filed August 7, 2014
Publish
[CR25]