

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00092-CR
No. 02-19-00093-CR
No. 02-19-00094-CR

_____

JAMES RAY GREGORY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court Nos. 1503764D, 1504553D, 1505100D

---

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant James Ray Gregory signed written confessions and, without any plea-bargain agreements, entered pleas of guilty to:

> (1) an aggravated robbery with a deadly weapon committed on or about June 30, 2017;
>
> (2) an aggravated robbery with a deadly weapon committed on or about June 20, 2017; and
>
> (3) an aggravated robbery with a deadly weapon committed on or about June 28, 2017.

At a later sentencing hearing, the trial court sentenced Gregory to 22 years' imprisonment for the June 30, 2017 offense, 18 years' imprisonment for the June 20, 2017 offense, and 18 years' imprisonment for the June 28, 2017 offense. All three sentences are running concurrently.

On appeal, in two points, Gregory complains about two videos that the trial court admitted during the sentencing hearing:

> (1) he contends that State's Exhibit 60—a video of the June 30, 2017 aggravated robbery—was insufficiently authenticated, and
>
> (2) he argues that State's Exhibit 4—a video of an extraneous offense, Gregory's June 14, 2017 aggravated robbery—was irrelevant and insufficiently authenticated.

In both instances, we hold that the trial court did not abuse its discretion by admitting the videos and overrule Gregory's points.

## I. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). Authentication decisions fall under this rule. *See Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). A trial court abuses its discretion only if its ruling falls outside the zone of reasonable disagreement. *Montgomery*, 810 S.W.2d at 391.

## II. Authentication

To properly authenticate or identify an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. Tex. R. Evid. 901(a). Rule 901(a)'s admissibility threshold is liberal. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015). To admit disputed evidence, conclusive proof of authenticity is not required. *Fowler*, 544 S.W.3d at 848. The trial court's role is to make a preliminary determination whether the proponent has supplied enough facts to allow a factfinder to reasonably conclude that the proffered evidence is authentic. *Butler*, 459 S.W.3d at 600; *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). After the trial court admits the evidence, the factfinder ultimately determines whether the item is indeed what its proponent claims. *Butler*, 459 S.W.3d at 600; *Tienda*, 358 S.W.3d at 638.

### III. State's Exhibit 60

Gregory argues that the witness who sponsored State's Exhibit 60 (the video of the June 30, 2017 aggravated robbery) was not present when the robbery occurred, so she had no personal knowledge of the video's contents and thus could not authenticate it. *See* Tex. R. Evid. 901(b)(1). Gregory also contends that the witness could not authenticate the video based on the surveillance system's reliability because she did not testify about removing the video from the recording device or about whether the video itself had been altered. *See* Tex. R. Evid. 901(b)(9).

#### A. Background

Laila Zarin Panjwani testified that she owned the Corner Store on North Main Street in Euless and that in 2017 she and her now-deceased husband, Abdul Panjwani, worked there. (Because the Panjwanis share the same last name, we refer to them by their first names. Abdul had since died from unrelated health problems.) She would work until 3:00 p.m., and he would work thereafter.

During the evening of June 30, 2017, Abdul called Laila. Laila described Abdul as frightened and shocked, so she went to the Corner Store. When she arrived about twenty to twenty-five minutes later, the police were there; after she identified herself as the owner, the police let her inside the store, where, once inside, she entered the password to access the surveillance system, located the surveillance video for the officers, and made a copy of it for them. Abdul had already been taken to the hospital, but blood was all over the store's floor. When she and the officers watched the

4

surveillance video, she recognized Abdul, saw that Abdul was wearing the same clothing that she had seen him wearing earlier that day, and saw the blood on the store's floor. After watching the video, Laila went to the hospital and spoke with Abdul; he described the events to Laila exactly as she had seen them on the video.

When asked to describe her surveillance system, Laila praised its reliability:

That system is very nice, perfect. Whatever happens in the store today or two days before, everything -- when a customer comes, anything happens in the store, my employee or anything, I can go and check and everything is correct. The system is a good system. That says everything. That's what the system is for.

Laila also described how the system operated, "We have a DVR system on-site[,] and then it records[,] and I can see at home, on my phone, what's going on[,] and it records the next day whatever is happening. If something is wrong or something happened with a customer, I can check. It works perfect." She said that the system automatically recorded for up to 15 days; during that time, she could go back and review anything that the numerous cameras had captured. The system also allowed her to choose the specific camera angles that she wanted. She had owned the system for two years and could view it both at the store and remotely on her phone. In the past when she had checked videos, she had determined that the system had recorded correctly. To the best of her knowledge, the system was working correctly on June 30, 2017.

Laila recognized State's Exhibit 60 as the surveillance video from the Corner Store that she and the prosecutor had reviewed earlier that day. Except for the portions that had been deleted from the front and back ends, it had not been altered.

## B. Discussion

Rule 901 identifies numerous means of authentication. *See* Tex. R. Evid. 901(b). Having personally witnessed what is on a video is but one means. *See id.* 901(b)(1); *Fowler*, 544 S.W.3d at 849; *Standmire v. State*, 475 S.W.3d 336, 344–45 (Tex. App.—Waco 2014, pet. ref'd). Another way is by testimony that the process or system that produced the photo or video is reliable. *See* Tex. R. Evid. 901(b)(9); *Standmire*, 475 S.W.3d at 344; *Reavis v. State*, 84 S.W.3d 716, 719–20 (Tex. App.—Fort Worth 2002, no pet.). This method is most often used when there is no witness that was present at the scene or event depicted in the photograph or video. *Standmire*, 475 S.W.3d at 344. For example, this is common with security videos; such as those used after hours in convenience stores and freestanding automatic teller machines. *Id.* To authenticate such photographic or video evidence, the sponsoring witnesses usually

- describes the type of system used for recording and whether it was working properly;

- testifies whether they have reviewed the video or photos;

- testifies whether they have removed the video or device that stores the photos; and

6

- testifies whether the exhibit has been altered or manipulated.

*Id.*

Although Laila did not personally witness the events depicted on the video, she provided testimony showing that the video system was reliable and working properly, that she had reviewed the video with the officers at the scene and again with the prosecutor earlier that day, that she was the person who removed the video from the system and made a copy of it for the officers, and that—other than removing portions before and after the incident—no one had tampered with the video itself. *See* Tex. R. Evid. 901(b)(9); *Standmire*, 475 S.W.3d at 344. We hold that the trial court did not abuse its discretion by admitting State's Exhibit 60 and overrule Gregory's first point.

## IV. State's Exhibit 4

In Gregory's second point, he argues that the State's sponsoring witness, Officer Brett Behrends, could not authenticate State's Exhibit 4 (the video of an extraneous offense, Gregory's June 14, 2017 aggravated robbery) because Officer Behrends had no personal knowledge. *See* Tex. R. Evid. 901(b)(1). Next, although Gregory testified, he contends that his own testimony was limited to admitting that the shorts that the police had recovered from his residence were the same shorts seen in the video and that this limited admission was insufficiently distinctive to authenticate the video. *See* Tex. R. Evid. 901(b)(4). Finally, Gregory maintains that there was no evidence showing that the video system was reliable or that the video

itself was accurate. *See* Tex. R. Evid. 901(b)(9). Gregory concludes that if the evidence was not authenticated, it has no relevance. *See Tienda*, 358 S.W.3d at 638.

## A. Background

Officer Behrends met with the manager of the 7-Eleven where a robbery had occurred, and by knowing its date and general time, Officer Behrends—with the manager's help—located the robbery on the 7-Eleven's surveillance video. When the prosecutor offered a copy of this video, State's Exhibit 4, into evidence, Gregory objected on relevance and authenticity grounds. In response, the prosecutor offered the video "conditionally . . . upon later evidence presented by the State." The trial court admitted State's Exhibit 4 for record purposes only, but when doing so, the trial court noted that the State intended to revisit the authentication issue later.

The State's authentication opportunity arose when Gregory testified. The State published State's Exhibit 4, and Gregory described for the trial court what he was doing in the video while it was being played. Gregory also admitted that State's Exhibit 31 (a photograph of the shorts that the police had recovered from Gregory's residence) were the same shorts depicted in State's Exhibit 4. This time when the State reoffered State's Exhibit 4 "for all purposes," the trial court admitted it.

## B. Discussion

Gregory effectively admitted that he was the person in State's Exhibit 4 when he described to the trial court what he was doing in the video. He was thus a person with knowledge, and his testimony authenticated the video. *See* Tex. R. Evid.

8

901(b)(1). Gregory also linked the shorts that the police had recovered from his residence to the shorts that he was wearing in the video. Finally, Officer Behrends and the 7-Eleven manager were able to locate the relevant video based upon the date and time that the offense occurred. These distinctive characteristics provided additional support for concluding that the video was what the State claimed it was. *See id.* 901(b)(4); *Fowler*, 544 S.W.3d at 849–50. We hold that the trial court did not abuse its discretion by admitting State's Exhibit 4 and overrule Gregory's second point.

## V. Conclusion

Having overruled both of Gregory's points, we affirm the trial court's judgments.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 14, 2021

9