

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00356-CR

**LARRY PAUL CULVERWELL,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

---

### From the County Court at Law No. 1
### Brazos County, Texas
### Trial Court No. 18-03939-CRM-CCL1

---

## MEMORANDUM OPINION

---

Appellant, Larry Paul Culverwell, was convicted of the misdemeanor offense of driving while intoxicated, with a previous conviction for driving while intoxicated. *See* TEX. PEN. CODE ANN. §§ 49.04(a), 49.09(a). In one issue, Culverwell contends that the trial court abused its discretion by admitting a surveillance video that was not properly authenticated. We affirm.

**Procedural and Factual History**

On August 17, 2018, Culverwell, a sixty-two-year-old male, failed to yield the right of way at a stop sign, causing a collision with another driver. Sergeant Michael Jones of the Bryan Police Department was dispatched to the scene at 6:42 p.m. Culverwell admitted to Sergeant Jones that the accident was his fault and that he had been drinking at the Cowboy Club, the bar where he was working. Culverwell stated that he had only consumed three drinks; however, surveillance video showed Culverwell consuming approximately ten drinks between 12:38 p.m. and 5:52 p.m. Sergeant Jones conducted field sobriety tests on Culverwell in an empty parking lot adjacent to the scene of the accident. Sergeant Jones testified that Culverwell exhibited four of six "clues" on the horizontal gaze nystagmus test, indicating that he was intoxicated. The second and third tests involved Culverwell walking and turning, as well as standing on one leg. Based on these tests, Culverwell displayed additional clues of intoxication, although Sergeant Jones conceded on cross-examination that Culverwell's age could have affected the second and third tests. Nevertheless, because he displayed sufficient signs of intoxication, Culverwell was placed under arrest. Culverwell consented to both a breath and blood test to measure his blood alcohol content. Desiree Hutson, a technical supervisor with the Texas Department of Public Safety, testified that Culverwell's breath

test results yielded a blood alcohol content of 0.087 at 7:50 p.m. and 0.084 at 7:53 p.m. Dana Paris, a forensic scientist with the Texas Department of Public Safety, tested the blood collected from Culverwell. According to Paris, Culverwell's blood was drawn at 8:24 p.m. Analysis of the blood draw yielded a blood alcohol content of 0.078.

On August 23, 2018, Rebecca Wendt, a crime scene investigator with the Bryan Police Department, executed a search warrant at the Cowboy Club to obtain a surveillance video. Wendt downloaded multiple camera angles on the surveillance video from the date of the accident. Sergeant Jones testified that he reviewed the surveillance video and confirmed that the date and timestamps were consistent with Culverwell's statements regarding his whereabouts prior to the accident. Over Culverwell's authentication objection, the trial court admitted the surveillance video from the Cowboy Club, and it was played for the jury.

At the conclusion of trial, the jury found Culverwell guilty of the charged offense. Culverwell elected for the trial court to assess punishment. At the conclusion of the sentencing hearing, the trial court sentenced Culverwell to thirty days in jail and a $1,000 fine. The trial court certified Culverwell's right to appeal, and this appeal followed.

**Analysis**

In his sole issue on appeal, Culverwell contends that the trial court abused its discretion by admitting the surveillance video from the Cowboy Club without proper authentication. We disagree.

STANDARD OF REVIEW

We review the trial court's ruling on authentication issues under an abuse of discretion standard. *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018); *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). A trial court does not abuse its discretion by admitting evidence when it "reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified." *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Cameron*, 241 S.W.3d at 19 (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)).

APPLICABLE LAW

Texas Rule of Evidence 901 governs the authentication requirements for the admissibility of evidence and requires the proponent to produce sufficient evidence to support a finding that the evidence is what the proponent claims it is. TEX. R. EVID. 901(a). Whether the proponent has crossed this threshold is a preliminary determination for the trial court. *Id.* at R. 104(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012); *Ryder v. State*, 581 S.W.3d 439, 454 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Rule 901 provides a non-exclusive list of methods for the authentication of evidence, including

witness testimony, appearance, contents, substance, or other distinctive characteristics taken in conjunction with circumstances. TEX. R. EVID. 901(b); *Ryder*, 581 S.W.3d at 454.

In *Standmire v. State*, this Court stated the following:

> There are at least two ways, if not more, to authenticate photographic evidence [,] including videos. The most common is by testimony that the photo or video is an accurate representation of the object or scene in question. *See Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988). In this situation, the sponsoring witness is not required to be the person who operated the camera or video equipment. *Id.* Another slightly less common but equally permissible way is by testimony that the process or system that produced the photo or video is reliable. *See Reavis v. State*, 84 S.W.3d 716, 720 (Tex. App.—Fort Worth 2002, no pet.). Reliability of the system or process is most often used when there is no witness that was present at the scene or event depicted in the photograph or video. This is common with security videos [,] such as those used after hours in convenience stores and freestanding automatic teller machines. For authentication of such photographic or video evidence, the sponsoring witness usually 1) describes the type of system used for recording and whether it was working properly; 2) testifies whether he reviewed the video or photos; 3) testifies whether he removed the video or device that stores the photos; and 4) testifies whether the video or photos have been altered or tampered with. *See id.; see also Randell v. State*, No. 07-11-00493-CR, 2013 Tex. App. LEXIS 742, [at *]*5-7 (Tex. App.—Amarillo Jan. 25, 2013, pet. ref'd) [(mem. op., not designated for publication)]; *Warren v. State*, No. 08-11-00029-CR, 2012 Tex. App. LEXIS 1544, [at] *3 (Tex. App.—El Paso Feb. 29, 2012, no pet.) (not designated for publication). But if the sponsoring witness was present when the photographs or video were taken or has personal knowledge of what the photographs or video depict, it is unnecessary for the sponsoring witness to also testify regarding the reliability of the system. *See* TEX. R. EVID. 901.

475 S.W.3d 336, 344-45 (Tex. App.—Waco 2014, pet. ref'd).

The proponent of the evidence does not need to rule out all possibilities inconsistent with authenticity or prove beyond any doubt that the evidence is what it

purports to be. *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.). In fact, the proponent is not required to prove anything. *Dominguez v. State*, 441 S.W.3d 652, 659 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Rather, the rule requires only a showing that satisfies the trial court that the matter in question is what the proponent claims; once that showing is made, the exhibit is admissible. *Id.; see Tienda*, 358 S.W.3d at 638-40 (noting that electronic communications may be authenticated by a variety of means and that "the best or most appropriate method for authenticating electronic evidence will often depend upon the nature of the evidence and the circumstances of the particular case"); *Druery*, 225 S.W.3d at 502. Moreover, "[v]ideo recordings without audio are treated as photographs and are properly authenticated when it can be proved that the images accurately represent the scene in question and are relevant to a disputed issue." *Fowler*, 544 S.W.3d at 849 (internal citation omitted).

ANALYSIS

Here, Wendt testified that, among her duties as an investigator, she downloads videos from businesses for use as evidence. She is familiar with digital video surveillance systems and can download videos from them. Wendt stated that she had downloaded videos previously from the Cowboy Club.

On August 23, 2018, Wendt executed a search warrant at the Cowboy Club, Texas, and obtained surveillance video from the Cowboy Club's system from the day of the accident and Culverwell's arrest—August 17, 2018. Wendt recounted that the Cowboy

Club's surveillance system was working properly and that she was able to download multiple camera angles from August 17, 2018. Wendt further noted that the video tendered for admission into evidence as State's Exhibit 1 was a fair, accurate, and unaltered recording that she obtained from the Cowboy Club on August 23, 2018, and that the video was time and date stamped with the correct time and date.

Sergeant Jones confirmed that he had viewed State's Exhibit 1 and that, among other things, the video showed Culverwell enter and drive a pickup truck that matched the pickup truck that Culverwell was driving at the time of the accident and arrest. Sergeant Jones further testified that the time and date stamps on State's Exhibit 1 corresponded with information he obtained from Culverwell regarding Culverwell's whereabouts.

In this case, we conclude that there was sufficient evidence to enable a reasonable juror to conclude State's Exhibit 1 was what the State claimed it to be. *See* TEX. R. EVID. 901; *see also Standmire*, 475 S.W.3d at 344; *Reavis*, 84 S.W.3d at 720. Specifically, Wendt described the type of system used for recording and whether it was working properly. Furthermore, both Wendt and Sergeant Jones reviewed the video; Wendt testified that she removed the video and indicated that the video had not been tampered with or altered. *See Fowler*, 544 S.W.3d at 849-50 (concluding that a surveillance video was sufficiently authenticated where the facts included the officer's in-person request of the manager of the Family Dollar store to pull the surveillance video on a certain date at a

certain time; the distinctive characteristic that there is a date and time stamp on the videotape; the fact that the date and time on the videotape correspond to the date and time on the receipt that was found within three feet of the ATV; the fact that the videotape pulled by the manager reveals Fowler at the store on that date at that time purchasing the items listed on the receipt that was found near the stolen ATV); *Standmire*, 475 S.W.3d at 344; *Reavis*, 84 S.W.3d at 720; *see also Randell*, 2013 Tex. App. LEXIS 742, at **5-7; *Warren*, 2012 Tex. App. LEXIS 1544, at *3. Accordingly, we cannot say that the trial court's decisions to overrule Culverwell's authentication objection and admit State's Exhibit 1 were outside the zone of reasonable disagreement. *See Fowler*, 544 S.W.3d at 850; *see also Cameron*, 241 S.W.3d at 19; *Montgomery*, 810 S.W.2d at 391. We overrule Culverwell's sole issue on appeal.

**Conclusion**

We affirm the judgment of the trial court.

MATT JOHNSON
Justice

Before Chief Justice Gray,
        Justice Johnson,
        and Justice Smith
Affirmed
Opinion delivered and filed August 24, 2022
Do not publish
[CR25]

