**Opinion issued March 1, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00972-CR

————————————

**FLORENCIO LEAL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1271369**

---

## MEMORANDUM OPINION

Appellant, Florencio Leal, was found guilty by a jury of the offense of

capital murder.[1]  The trial court sentenced Appellant to the mandatory sentence of

---

[1]  *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2015).

life in prison without parole.[2]  Raising four issues, Appellant asserts the trial court committed charge error, claims the trial court erred by admitting extraneous offense evidence, and asserts that the evidence is insufficient to support his judgment of conviction.

We affirm.

## Background

Tracy Woodman lived on Lucore Street in Houston, Texas.  Across the street from Woodman lived Andres Gonzalez.  Around 8:30 p.m. on April 8, 2010, Woodman heard three to five gunshots outside her home.  She went out onto her porch and noticed that the front door of Gonzalez's house was open and the lights were on inside the home.  Woodman saw two men at the house.  She first noticed a short, Hispanic man standing in the front doorway.  She saw that man fire a gun he was holding.  She then saw a tall Hispanic man come from the side of the house into the yard.  As they left, Woodman saw the two men shooting at Gonzalez's house.

Woodman observed the men get into a car that looked like a Ford Taurus.  The car left and she saw a Honda Civic, which had been parked across the street, follow the Taurus.

---

[2]   *See* TEX. PENAL CODE ANN. § 12.31(a)(2) (Vernon Supp. 2015).

Woodman called 9-1-1. When the police arrived, they found Gonzalez dead in his house from gunshot wounds. The police recovered a .22 pistol and narcotics from the house. They also noticed a red smear on the outside doorjamb, which police initially believed to be blood.

Officer R. Bolton, a homicide detective with the Houston Police Department, investigated Gonzalez's murder. From the location of the red smear, Officer Bolton deduced that one of shooters had also been shot. Officer Bolton also deduced that the men had fled in the direction of Pasadena. He contacted the Pasadena Police Department to determine whether any gunshot wounds had been reported. Officer Bolton learned that Appellant had gone to the hospital in Pasadena on the night of Gonzalez's murder with a gunshot wound.

Officer Bolton obtained Appellant's address from the Pasadena police department. He contacted Appellant's family and learned that Appellant planned to flee to Mexico with the aid of an acquaintance. The police contacted the acquaintance, and he agreed to help police. When he went to meet the acquaintance, Appellant was taken into custody by police.

Appellant agreed to give a recorded statement to the police. In the statement, Appellant explained what had occurred on the night Gonzalez was killed. He said that Javier Cortez called him and told him that he needed Appellant's assistance to "take care of some business." Appellant met Cortez.

3

Cortez instructed him to drive a turquoise Grand Am to Appellant's mother's house, and Appellant did so. Appellant said that there were four guns in the backseat of the Grand Am, including a .357 firearm, a .40 firearm, and a shotgun. About 30 minutes after he got to his mom's house, Javier and Javier's cousin arrived in a small, tan four-door car. They got into the Grand Am with Appellant and told him to go to Walmart to buy "some slugs" for the shotgun. Appellant stated that he went to Walmart but did not purchase the ammunition because Walmart did not have the slugs.

When Appellant returned from Walmart, the three men drove to Gonzalez's house on Lucore in the turquoise Grand Am and the small tan car. Appellant and Cortez were in one car and the cousin was in the other. Cortez told Appellant that he and his cousin planned to "shoot up" the house while Appellant searched the house to find "drugs and money." When they arrived, Gonzalez opened the front door, and Cortez's cousin shot Gonzalez two or three time. Appellant stated that Gonzalez fell back against the couch. Appellant came into the house after the cousin. Appellant immediately began searching the kitchen for drugs and money. Cortez came in last. Appellant stated that, when he entered, Cortez also shot Gonzalez a number of times. Appellant searched the kitchen cabinets and one bedroom but found neither drugs nor money in the house.

4

Appellant said that the three men left the scene in the two cars. Appellant and Cortez went to a club for a couple of hours without the cousin. The two men met the cousin again later that night. Cortez told Appellant that they were going to another house on Dade Street. Appellant indicated that they went to the Dade house to steal "dope money."

The three men then rode together in the tan car to the Dade Street house. When they arrived, Cortez took the shotgun and Appellant had the .357 firearm. They walked up to the house, and Cortez shot the door open. Appellant explained that, when he stepped inside the house, he was immediately shot in the arm. The three men then left the house. Cortez and his cousin dropped Appellant off at the hospital to be treated for his gunshot wound.

Appellant was charged with the offense of capital murder. Among the State's witnesses at trial were Tracy Woodman and Officer Bolton. The State also offered (1) forensic evidence from the Lucore Street crime scene, (2) a video, showing Appellant in the ammunition department of Walmart on the day of the murder, and (3) Appellant's audio-recorded statement in which he implicated himself in the robbery and murder of Gonzalez.

The jury charge authorized the jury to convict Appellant as a principal actor or as a party to the offense under either Section 7.02(a)(2)—aider and abettor—or Section 7.02(b)—co-conspirator—of the Texas Penal Code. Appellant objected to

5

the submission of the Section 7.02(b) co-conspirator instruction on the ground that Section 7.02(b) was unconstitutional. The trial court overruled Appellant's objection to the charge.

The jury found Appellant guilty of the offense of capital murder. The trial court sentenced Appellant to life in prison without the possibility of parole. Appellant now appeals, raising four issues.

## Sufficiency of the Evidence

In his fourth issue, Appellant asserts that the evidence was not sufficient to support the judgment of conviction.

## A.     Standard of Review and Capital Murder Elements

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under the single standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Pursuant to the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the

verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

In our review of the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to

7

establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits capital murder if he intentionally commits murder while in the course of committing or attempting to commit robbery. TEX. PENAL CODE § 19.03(a)(2) (Vernon Supp. 2015). A person commits murder if he "intentionally or knowingly causes the death of an individual." *Id.* § 19.02(b)(1) (Vernon 2011). A person commits robbery if "in the course of committing theft and with intent to obtain or maintain control of . . . property, he intentionally, knowingly, or recklessly causes bodily injury to another; or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02(a)(1)–(2) (Vernon 2011). Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. *Id.* § 31.03(a) (Vernon Supp. 2015).

A person may be charged with an offense if it is committed by his own conduct, by the conduct of another for whom he is criminally responsible, or both. *Id.* § 7.01(a)–(b) (Vernon 2011). The law of parties is codified by section 7.02 of the Penal Code, which provides that:

> (a) A person is criminally responsible for an offense committed by the conduct of another if:

> . . . .

8

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

. . . .

(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* § 7.02(a)(2), (b) (Vernon 2011). A factfinder may determine that an individual is a party to an offense when the evidence shows that there was "an understanding and common design to commit the offense." *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012).

## B. Analysis

Appellant complains that the evidence is insufficient to support his conviction because "[t]he only evidence connecting [him] to the crime was his own confession" and his confession is not sufficiently corroborated by independent evidence. In making this argument, Appellant is invoking the corpus delicti rule.[3]

---

[3] Appellant claims that the evidence is insufficient to support a finding of guilt. In so doing, Appellant complains that his confession is not sufficiently corroborated by independent evidence. Thus, Appellant has blended the standard for whether a confession is sufficiently corroborated with the standards for sufficiency of the evidence to support his conviction. These standards are distinct; however, in the interest of justice, we will consider each standard. *See Gonzales v. State*, No. AP–75540, 2009 WL 1684699, at *3 (Tex. Crim. App. June 17, 2009) (not designated for publication).

The corpus delicti rule is one of evidentiary sufficiency affecting cases in which there is an extrajudicial confession. *Miller v. State*, 457 S.W.3d 919, 924 (Tex. Crim. App. 2015). The rule states that, "[w]hen the burden of proof is 'beyond a reasonable doubt,' a defendant's extrajudicial confession does not constitute legally sufficient evidence of guilt absent independent evidence of the corpus delicti." *Id.* (quoting *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013)). To satisfy the corpus delicti rule, there must be "evidence independent of a defendant's extrajudicial confession show[ing] that the 'essential nature' of the charged crime was committed by someone." *Id.* (quoting *Hacker*, 389 S.W.3d at 866).

The purpose of the corpus delicti rule is to ensure that a person is not convicted of a crime that never occurred, based solely on that person's extra-judicial confession. *Salazar v. State*, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002). The rule was not intended to ensure that all confessions are corroborated in specific details or to ensure that the suspect does not falsely confess to a crime that did occur but for which he had no culpability. *Id.*

When the offense is capital murder charged as a murder in the course of committing another felony, independent evidence that a crime has been committed must corroborate both the murder and the underlying felony. *Cardenas v. State*, 30 S.W.3d 384, 390 (Tex. Crim. App. 2000). "[T]he corpus delicti of murder is

established if the evidence shows the death of a human being caused by the criminal act of another." *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). With respect to the underlying felony, it is only required that there is some evidence rendering the commission of the offense more probable than it would have been without the evidence; the underlying felony need not be conclusively proven by corroborative evidence. *Salazar*, 86 S.W.3d at 644.

"It satisfies the corpus delicti rule if some evidence exists outside of the extra-judicial confession which, considered alone or in connection with the confession, shows that the crime actually occurred." *Id.* The corroborating evidence need not conclusively prove the underlying offense; rather, "[a]ll that is required is that there be some evidence which renders the commission of the offense more probable than it would be without the evidence." *Cardenas*, 30 S.W.3d at 390 (quoting *Chambers v. State*, 866 S.W.2d 9, 15 (Tex. Crim. App. 1993)). The State may prove the corpus delicti by circumstantial evidence. *See McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). In short, "the quantum of independent evidence necessary to corroborate the corpus delicti in a criminal prosecution relying upon the extrajudicial confession of an accused need not be great." *Gribble v. State*, 808 S.W.2d 65, 71–72 (Tex. Crim. App. 1990).

Here, the independent evidence offered at trial established the corpus delicti of murder. Woodman testified that she heard several gunshots and then saw two

men shooting at Gonzalez's home. When they arrived, the police found Gonzales dead in his home with multiple gunshot wounds. A total of twenty-one shell casings—eighteen .40 caliber casings and three .357 caliber casings—were recovered from the scene by police. The assistant medical examiner testified that she had ruled Gonzalez's death a homicide. She stated that the cause of Gonzalez's death was "gunshot wounds of the chest, abdomen, and legs." Given all the record evidence, other than Appellant's extrajudicial confession, we hold that evidence was presented tending to establish that Gonzalez was murdered by someone; thus, sufficient independent evidence establishes the corpus delicti of murder.[4]

---

[4] Appellant asserts that there needed to be evidence corroborating his admission that he was at the crime scene. Contrary to Appellant's position, the perpetrator's identity is not a part of the corpus delicti and need not be corroborated. *Chambers v. State*, 866 S.W.2d 9, 15 (Tex. Crim. App. 1993). As mentioned, the corpus delicti rule was not intended to ensure that all confessions are corroborated in specific details or to ensure that the suspect does not falsely confess to a crime that did occur but for which he had no culpability. *Salazar v. State*, 86 S.W.3d 640, 644–45 (Tex. Crim. App. 2002). In any event, we note that many details given by Appellant in his confession were corroborated by other evidence. For example, Appellant stated that he had gone to Walmart to buy slugs for the shotgun. A video from Walmart, taken the day of the murder, shows Appellant in the sporting goods department where ammunition is sold. In his statement, Appellant said that he and the other two men had gone to Gonzalez's house in two cars. Woodman testified that she saw two cars leaving the scene. Appellant stated that Gonzalez was shot multiple times. Woodman testified that she heard multiple shots and then saw the men shooting multiple times. The evidence also showed that Gonzalez had been shot multiple times. Appellant stated that there was a .40 caliber and a .357 caliber gun in the Grand Am. He also indicated that Gonzalez was shot with two different guns. The forensic evidence showed that two guns were used at the scene, a .40 caliber gun and a .357 caliber gun. Appellant stated that Gonzalez fell

Concerning the underlying offense of robbery, we determine whether the independent evidence which, considered with the confession, proved that someone committed the crime of robbery. *See Salazar*, 86 S.W.3d at 645. There need only be some evidence rendering the commission of the robbery offense more probable than it would have been without the evidence. *See id.* Here, Appellant confessed that he went into Gonzalez's house to look for drugs and money. He stated that he searched in the kitchen and one of the bedrooms for these items but did not find any. Woodman testified that she heard the initial gunshots and had been looking at Gonzalez's house a couple of minutes before the man she saw standing in the doorway fired his gun. Less than a minute later, Woodman saw the second man come from the direction of the side of the house. The jury could have inferred that, during the time that Woodman heard no gunfire, the house was being searched.

One of the investigating police officers testified that Gonzalez's house had been ransacked. He stated that the house appeared "like there had been a fight or somebody had ransacked looking for something." *See, e.g., Williams v.* State, 958 S.W.2d 186, 190 (Tex. Crim. App. 1997) (stating that "murder scene itself showed signs of robbery," such as ransacked drawers, sufficient to corroborate defendant's robbery confession). In addition, the evidence showed that narcotics were

near the couch when he was shot. The crime scene evidence showed Gonzalez's body lying against the couch. Thus, many specific details of Appellant's statement were corroborated by other evidence in the record.

13

recovered from Gonzalez's kitchen, one of the places that Appellant stated that he had looked for the drugs. Lastly, as discussed, the bodily injury element of robbery was also shown by independent evidence. We conclude that this evidence rendered the Appellant's commission of robbery more probable than it would have been, if it had been based on the Appellant's confession alone. We hold that Appellant's admission to acting as a party to murder and robbery were sufficiently corroborated by independent evidence.

Appellant also asserts that the evidence was insufficient to support his conviction because "there is no evidence [he] unlawfully appropriated property with intent to deprive the owner of the property." He points out that Woodman did not testify that she saw either of the men "carr[y] off any property and not one of the law enforcement witnesses testified any property was missing or unlawfully appropriated."

Appellant's argument is without merit. A person commits theft if the person "unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a). A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of property, the person intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02(a); *see* also *Cooper v. State*, 67 S.W.3d 221, 222 (Tex.

Crim. App. 2002). The Penal Code defines "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." TEX. PENAL CODE ANN. § 29.01(1) (Vernon 2011). Thus, "the State is not required to show a completed theft to establish the corpus delicti of robbery." *Llamas v. State*, 270 S.W.3d 274, 279 (Tex. App.—Amarillo 2008, no pet.). In addition, Appellant admitted in his statement that he searched Gonzalez's home for the purpose of taking drugs and money.

We hold that the evidence presented at trial was sufficient to support the judgment of conviction. Given that independent evidence shows that the crimes of murder and robbery actually occurred, Appellant's confession alone was sufficient to prove, beyond a reasonable doubt, his guilt of all the elements of capital murder as a party. *See Fisher v. State*, 851 S.W.2d 298, 304 (Tex. Crim. App. 1993) (holding that confession, together with evidence that charged crime was committed by someone, was sufficient to support conviction).

We overrule Appellant's fourth issue.

### Constitutionality of Penal Code Section 7.02(b)

In his first and second issues, Appellant asserts that the trial court erred when it instructed the jury, pursuant to Penal Code Section 7.02(b), that Appellant could be found guilty as a co-conspirator. In analyzing a jury-charge issue, our

15

first duty is to decide if there was error. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.— Houston [1st Dist.] 2009, pet. ref'd). Only if we find error do we consider whether an objection to the charge was made and analyze for harm. *Tottenham*, 285 S.W.3d at 30.

Under Section 7.02(b), all the conspirators intending to commit one felony may be convicted for any other felony actually committed in furtherance of the intended felony if such felony was one that should have been anticipated in the attempt to carry out the intended felony. *See* TEX. PEN. CODE ANN. § 7.02(b). In this case, the trial court gave the following Section 7.02(b) instruction:

> [Y]ou must find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Florencio Leal, entered into an agreement with Javier Cortez and other unidentified suspects to commit the felony offense of robbery of Andres Gonzalez, as alleged in this charge, and pursuant to that agreement they did carry out their conspiracy, and while in the course of committing said conspiracy, Javier Cortez and other unidentified suspects intentionally caused the death of Andres Gonzalez by shooting Andres Gonzalez with a deadly weapon, namely a firearm, and the murder of Andres Gonzalez was committed in furtherance of the conspiracy and was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy . . . .

Appellant asserts that the trial court erred in giving the instruction because Section 7.02(b) is unconstitutional under *Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368 (1982). In *Enmund*, the United States Supreme Court held that the Eighth Amendment does not permit imposition of the death penalty on "one who aids and

16

abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *Id.* at 797, 102 S. Ct. at 3376.

Appellant claims that, pursuant to *Enmund*, Section 7.02(b) is unconstitutional as applied to him because no evidence showed that he had the intent to kill Gonzales. He also asserts that the statutory provision is facially unconstitutional "because §7.02(b) does not require the state to prove the required mens rea for the offense of capital murder required under *Enmund v. Florida . . . .*"

Appellant's reliance on *Enmund* is misplaced. The Court of Criminal Appeals has made clear that, while it prevents imposing the death penalty under certain circumstances, *Enmund* does not forbid a capital murder conviction for a non-triggerman under the law of parties. *See Johnson v. State*, 853 S.W.2d 527, 534–535 (Tex. Crim. App. 1992) (holding that an individual may be found guilty of capital murder based on the law of parties without violating *Enmund* and noting that Court of Criminal Appeals has continually held that Section 7.02 applies to capital murder cases); *Murphy v. State*, No. AP–74851, 2006 WL 1096924, at *21 (Tex. Crim. App. Apr. 26, 2006) (not designated for publication) (holding that trial court did not err by overruling *Enmund* objection to Section 7.02(b) instruction in capital murder case).

Moreover, in *Enmund*, the Supreme Court held that the Eighth Amendment prohibits the imposition of the *death penalty* for aiding and abetting felony murder 458 U.S. at 797, 102 S. Ct. at 3378. Death sentences differ significantly from life imprisonment. *See Gardner v. Florida*, 430 U.S. 349, 357, 97 S. Ct. 1197 (1977) (concluding that death penalty "is a different kind of punishment from any other which may be imposed in this country"). Here, the State did not seek the death penalty against Appellant. Because its holding is confined to the application of the death penalty, *Enmund* is of limited application in this case. *See Cienfuegos v. State*, 113 S.W.3d 481, 495 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

Lastly, we explained in *Cienfuegos* that "section 7.02(b) does not dispense with the requirement of a culpable mental state in regard to a capital murder conviction under the law of parties." *Id.* at 493. We explained,

> [Section 7.02(b)] provides that if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, "all conspirators are guilty of the felony actually committed, though having no intent to commit it, *if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy*."

*Id.* (quoting TEX. PEN. CODE ANN. § 7.02(b)); *see also Gravis v. State*, 982 S.W.2d 933, 938 (Tex. App.—Austin 1998, pet. ref'd) (holding that Section 7.02(b) does not lack a mens rea requirement and is not facially unconstitutional in regard to defendants convicted of capital murder as conspirators to commit other felonies).

18

Here, the Section 7.02(b) instruction comported with the statutory language, requiring a mens rea.

We hold that Appellant has not shown that the trial court erred by instructing the jury that it could find Appellant guilty as a co-conspirator. We overrule Appellant's first and second issues.

## Extraneous-Offense Evidence

In his third issue, Appellant asserts that the trial court erred by admitting extraneous-offense evidence regarding his participation in the attempted robbery of the house on Dade Street later the same night as the Gonzalez murder. As he did at trial, Appellant asserts that the evidence of the Dade Street robbery is not admissible extraneous-offense evidence under Rule of Evidence 404(b), and he claims that the evidence should have been excluded under Rule of Evidence 403 because its probative value was outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403, 404(b).

### A. Legal Principles

We review a trial court's ruling on the admissibility of extraneous offenses for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). We will not reverse a trial court's ruling on evidentiary matters unless the decision was outside the zone of reasonable disagreement. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). If the trial court's ruling

can be justified on any theory of law applicable to the ruling, the ruling will not be disturbed. *De La Paz,* 279 S.W.3d at 344. "When a trial court further decides not to exclude the evidence, finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, this decision too shall be given deference." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Rule 404(b) prohibits the introduction of extraneous offenses to show character conformity. TEX. R. EVID. 404(b); *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004); *Blackwell v. State*, 193 S.W.3d 1, 8 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Evidence of extraneous offenses may, however, be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b); *see also Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990). Evidence of an extraneous offense is also admissible if it is relevant to a fact of consequence apart from the tendency to show conduct in conformity with character. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). In addition, even when the admission of extraneous evidence is permissible under rule 404(b), such evidence may still be excluded, under Rule 403, if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Blackwell*, 193 S.W.3d at 9.

**B. Harmless Error**

Even if we assume that the trial court abused its discretion by admitting the extraneous-offense testimony, we will not reverse the judgment if the error was harmless. *See* TEX. R. APP. P. 44.2. Error in admitting evidence concerning extraneous offenses is reviewed as non-constitutional error. *See Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Rule of Appellate Procedure 44.2(b) provides that an appellate court must disregard non-constitutional error not affecting a criminal defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b).

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014) (citing *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002)). In assessing the likelihood that the jury's decision was adversely affected by the error, an appellate court considers everything in the record. *Id.* This includes testimony, physical evidence, jury instructions, the State's theories and any defensive theories, closing arguments, and voir dire, if applicable. *Id.* (citing *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003)). Important factors include the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, and may include whether the State emphasized the error and whether overwhelming evidence of guilt was present. *Id.*

The alleged error here was the admission of the portion of Appellant's confession in which he described his participation in the Dade Street robbery. In other words, the error involved the admission of extraneous-offense evidence of a similar character to the charged offense. The danger posed by admitting evidence of this nature is that it improperly amplifies a defendant's participation in the charged offense; it often serves no other purpose. *See Dekneef v. State*, 379 S.W.3d 423, 435 (Tex. App.—Amarillo 2013, pet. ref'd). In this vein, the State referenced the Dade Street robbery in its closing argument as follows:

> [H]ow many guns do they have? Four guns. He knew what they were going to do. Went to kill the guy and get the stuff. And a second house. The defendant got shot in the process. There is no absence of mistake. They didn't know they were going to the first house to shoot people up? This is what they do in the evening.

We note, however, that the primary focus of the State's closing argument, overall, was the evidence that related directly to the charged offense.

In addition to considering its character and purpose, it is important to place the extraneous-offense evidence in the context of the other evidence presented at trial. *See Walter v. State*, 293 S.W.3d 886, 891 (Tex. App.—Texarkana 2009, pet. ref'd). When we do so, the record here reveals that the extraneous-offense evidence likely had little effect or influence on the jury's verdict for two reasons. First, although it involved the serious and violent crime of aggravated robbery, the facts of the Dade Street robbery were not as disturbing as those of the charged

offense. While the charged offense involved the cold-blooded killing of Gonzalez, the jury heard that it was Appellant who was shot during the Dade Street robbery. No other person was injured. The robbery was short lived, being aborted once Appellant was shot in the arm.

Second, and most importantly, the record contains overwhelming evidence of Appellant's guilt. Evidence obtained during the investigation indicated that Gonzalez had been robbed and murdered. Appellant, in his audio-recorded confession, confessed his involvement in the crime. He admitted that he searched for drugs and money in Gonzalez's house while Cortez and the cousin killed Gonzalez by shooting him multiple times. Appellant also admitted that he had agreed to search the house for these items before he entered the home and that he knew the other two men planned to use guns during the robbery to shoot up the house. Such evidence was more than sufficient to prove Appellant's guilt as a party to capital murder, both as an aider and abettor and as a co-conspirator. *See* TEX. PENAL CODE ANN. §§ 7.02(b), 19.03(a)(2).

In sum, although the extraneous-offense evidence may have resulted in some prejudice to Appellant, the quantity and the nature of the evidence underlying the verdict supports a determination that the admission of the evidence did not affect Appellant's substantial rights because, after examining the record as a whole, we have a fair assurance that the error did not influence the jury, or had but a slight

effect. *See Motilla*, 78 S.W.3d at 355; *see also Walter*, 293 S.W.3d at 895–86 (holding that erroneous admission of hearsay testimony that three victims pleaded for their lives before being murdered by Walter was harmless error given volume and nature of evidence supporting Walter's capital murder conviction; evidence included Walter's inculpatory statement to his family that he had been the shooter). We hold that any error in admitting the extraneous-offense evidence was not harmful. *See* TEX. R. APP. P. 44.2(b); *see also Dekneef*, 379 S.W.3d at 435 (holding, in sexual-assault-of-a-child case, that Dekneef's inadmissible statement, that he generally had an "affinity" for children, was harmless error given his confession of sexually assaulting the complainant).

We overrule Appellant's third issue

**Conclusion**

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

24