Opinion issued July 26, 2018.



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00221-CR

———————————

**SAGE TYLER NUTT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Case No. 16669**

---

## MEMORANDUM OPINION

A jury found appellant Sage Tyler Nutt guilty of delivery of a controlled substance equal to or greater than 4 grams but less than 400 grams, penalty group 2, and assessed his punishment at five years' imprisonment. In four issues, Nutt argues: (1) there is legally insufficient evidence supporting his conviction because (a) there

is a material variance between the allegations in the indictment and the evidence presented at trial; and (b) it is not clear how much of the controlled substance was discovered in his possession; (2) the trial court abused its discretion by admitting an unauthenticated exhibit into evidence; (3) the trial court erred by failing to instruct the jury that a confidential informant's testimony must be independently corroborated; and (4) the trial court erred by failing to instruct the jury that Nutt had to know that the substance was not marihuana. We affirm the trial court's judgment.

## Background

Nutt was arrested and charged by indictment with the first-degree felony offense of delivery of a controlled substance equal to or greater than 4 grams but less than 400 grams, Penalty Group 2. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.113(a) & (d) (West 2017).

Specifically, the indictment alleged that Nutt "knowingly deliver[ed], by actual transfer, constructive transfer and offer to sell, to [William Moorman, a confidential informant], a controlled substance, namely, tetrahydrocannabinol, in an amount of four grams or more but less than 400 grams." The indictment also indicates that the charge is a first-degree felony offense, pursuant to Health & Safety Code section 481.113(d). Tetrahydrocannabinol is commonly referred to as THC.

Officer Ocanas, a narcotics investigator with the Brenham Police Department, testified that his confidential informant, Moorman, had arranged to purchase $100

worth of hashish from Nutt at the Brenham Saddle Shop as part of a "controlled buy." The day of the drug deal, Officer Ocanas and two other officers met Moorman at a predetermined location where Officer Ocanas instructed Moorman about the specifics of the purchase and gave him a marked $100 bill. The officers also equipped Moorman's vehicle with an audio recording device that broadcasted real-time audio to the officers' vehicle and a small digital surveillance camera was hidden on Moorman's body.

Officer Ocanas and the other officers followed Moorman's vehicle to the Brenham Saddle Shop and parked at a distance so that Nutt would not see them. According to Officer Ocanas, he saw Nutt walk out from behind the shop and approach Moorman's vehicle.[1] He also heard audio being broadcasted from inside Moorman's vehicle that was consistent with his observations. Officer Ocanas then followed Moorman to another predetermined location where Ocanas recovered the cameras from Moorman, along with a plastic baggy. Officer Ocanas testified that Moorman was supposed to purchase hashish from Nutt and that, based on his experience, the baggy he retrieved from Moorman appeared to contain hashish. Officer Ocanas sent the baggy to the Texas Department of Public Safety's laboratory for forensic analysis.

---

[1]    The video recorded by a camera in the officers' vehicle and the audio recording by the device placed in Moorman's car were admitted into evidence, and Nutt is not challenging the admissibility of either recording on appeal.

The State offered State's Exhibit 2 into evidence during Officer Ocanas's testimony. The officer explained that State's Exhibit 2 was the audio and video recording captured by the camera hidden on Moorman's body. According to Officer Ocanas, the camera captured everything that occurred from the time they placed the camera on Moorman until they recovered the camera from him after the drug deal. The video shows Officer Ocanas giving instructions to Moorman prior to the drug deal and the inside of Moorman's vehicle as he is driving to meet Nutt at the shop. The video also shows Nutt, who is standing beside the passenger window of Moorman's vehicle, hand something to Moorman with one hand and take what appears to be cash from Moorman with his other hand. The audio also captures a brief exchange of pleasantries between Nutt and Moorman, during which time Moorman tells Nutt, "Here you go, man." Nutt tells Moorman he appreciates it and concludes by saying, "Later, man."

Officer Ocanas testified that the camera hidden on Moorman's body was a device capable of making accurate recordings. He further testified that he was competent to operate the camera, and that he could identify all the voices captured by the recording. Officer Ocanas also testified that: (1) he reviewed the recording; (2) the recording had not been altered or changed in any manner; (3) the recording was a fair and accurate representation of the transaction; and (4) the events depicted in the recording were consistent with his personal observations.

Moorman testified that he arranged to purchase hashish from Nutt. After meeting with the officers, he drove to the Brenham Saddle Shop. According to Moorman, Nutt walked up to the vehicle's window, he handed Nutt some money, and then Moorman drove off. Moorman also testified that he had originally inquired about buying marihuana from Nutt, but Nutt told him that he did not have any marihuana and he offered to sell Moorman hashish instead.

Forensic scientist Henry Amen testified that the substance Officer Ocanas retrieved from Moorman contained "pure THC," as well as some plant material, and it had an aggregate weight of 4.48 grams. Amen could not say how much of the 4.48 grams was attributable to the THC. When asked to explain the difference between THC and marihuana, Amen testified that marihuana is a green, leafy plant material, whereas THC is an oily or sticky viscous substance extracted from the marihuana plant. According to Amen, THC and marihuana are not the same thing because one is a plant and the other is an oil.

Sergeant Bennett, a drug-recognition expert, testified that although marihuana and hashish are both controlled substances that contain THC, marihuana and hashish are not the same thing. Marihuana is "the plant itself, the stem, the leaves, the buds, the flora," and hashish is the resin extracted from the leaves of the buds of the marihuana plant. Marihuana is measured in pounds, whereas hashish is measured in grams. Bennett further explained that the law classifies marihuana and hashish

5

differently because hashish, which is the "purest form of the THC," provides the user with a "harder, longer, stronger" high than marihuana.

After the State closed its case, Nutt moved for a directed verdict on the ground that the indictment was materially and fatally defective because it alleged that he sold and delivered "tetrahydrocannabinol," and the phrase tetrahydrocannabinol, without more, includes marihuana. Relying on the Court of Criminal Appeals' 1979 opinion, *Few v. State*, Nutt argued that a charging instrument alleging possession of THC, without more, fails to allege an offense under state law, i.e., the felony offense of "tetrahydrocannabinols other than marijuana," and it "fails to state the elements essential to determine the jurisdiction of the court to try the case and the range of punishment which may be assessed." 588 S.W.2d 578, 585 (Tex. Crim. App. 1979). Notably, Nutt did not argue that he did not have notice of the charge against him such that he could not prepare an adequate defense, i.e., he did not know if he was being charged with delivering marihuana or tetrahydrocannabinol other than marihuana, or that he faced the possibility of a second prosecution based on the same offense as a result of the alleged variance. The trial court denied Nutt's motion for directed verdict.

The abstract portion of the charge instructed the jury, "Our law provides that a person commits DELIVERY OF A CONTROLLED SUBSTANCE FROM PENALTY GROUP 2, 4 GRAMS OR MORE BUT LESS THAN 400 GRAMS if

6

the person knowingly delivers a controlled substance to another person." The charge defined the term "controlled substance" as: "a substance, namely, tetrahydrocannabinol, including any adulterant or dilutant." The jury was instructed that "Penalty Group 2" includes "Tetrahydrocannabinols, other than marihuana." The charge also instructed the jury that "deliver" means to "actually transfer to another a controlled substance." The charge also defined "knowingly" as: "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when is aware that his conduct is reasonably certain to cause the result."

The application paragraph instructed the jury that, if it found beyond a reasonable doubt that Nutt "knowingly delivered to [Moorman], a controlled substance from Penalty Group 2, namely, tetrahydrocannabinol, in an amount of four grams or more but less than four hundred grams, then you will find [Nutt] GUILTY of the offense of DELIVERY OF A CONTROLLED SUBSTANCE FROM PENALTY GROUP 2, 4 GRAMS OR MORE BUT LESS THAN 400 GRAMS."

Nutt did not object to the charge.

7

## Sufficiency of the Evidence

In his first issue, Nutt argues that there is legally insufficient evidence supporting his conviction because (a) there is a material variance between the allegations in the indictment and the evidence presented at trial; and (b) it is not clear how much THC was in the baggy Officer Ocanas retrieved from Moorman.

### A.     Applicable Law and Standard of Review

Section 481.113(a) states that "a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 2 or 2-A." TEX. HEALTH & SAFETY CODE ANN. § 481.113(a). Under Section 481.002(8), the word "'deliver' means to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship." *Id.* § 481.002(8) (West 2017). Furthermore, "[t]he term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia." *Id.* Section 481.113 further provides that an offense under subsection(a) is a first-degree felony if "the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 400 grams." *Id.* § 481.113(d).

The Due Process Clause protects a person from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which

he is charged. U.S. CONST. amend. XIV; *accord Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). In reviewing the legal sufficiency of the evidence, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *accord Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We review the evidence "in the light most favorable to the verdict." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

In cases involving a sufficiency claim based on a variance between the indictment and the evidence, we consider the materiality of the variance rather than reviewing the evidence under the traditional sufficiency standards set forth in *Jackson*. *See Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002). A variance only renders the evidence insufficient when it is material. *Id*. A variance is material if it (1) deprived the defendant of sufficient notice of the charges against him such that he could not prepare an adequate defense, or (2) would subject him to the risk of being prosecuted twice for the same offense. *Id*. The burden of demonstrating the materiality of a variance rests with the defendant. *Santana v. State*, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001). One way in which a material variance occurs is when a statute specifies alternate methods by which an offense could be committed, the charging instrument pleads one of those alternate methods, but the State proves,

instead, an unpled method. *See Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012).

**B.    Analysis**

Nutt argues that the evidence is insufficient to support his conviction because there is a material variance between the allegations in the indictment and the evidence presented at trial. Specifically, Nutt argues that the material variance in this case is that the State pleaded one method of violating section 481.113—delivery of "tetrahydrocannabinol," which includes marihuana—but it attempted to prove another method for violating the statute—delivery of "tetrahydrocannabinol, other than marihuana." *See id.*

Section 481.113 specifies alternate methods by which an offense could be committed. In this case, the State alleged in its indictment that Nutt violated section 481.113(a) by three different methods: (1) knowingly delivering THC to Moorman by actual transfer, (2) knowingly delivering THC to Moorman by constructive transfer, and (3) knowingly offering to sell THC to Moorman. The jury was charged with finding evidence of one of these methods—actual transfer. Nutt does not argue that there is legally insufficient evidence of an *actual transfer* of THC. Thus, this is not a situation in which there is a material variance because the State pleaded one method for violating a statute but proved a different unpled method at trial.

10

To the extent that Nutt is arguing that the State effectively pleaded that he delivered marihuana by referring to the controlled substance as "tetrahydrocannabinol" in the indictment and omitting the phrase "other than marihuana," the delivery of marihuana is not an offense under section 481.113 because marihuana is not a Penalty Group 2 controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.113(a). The delivery of marihuana is a separate offense pursuant to Health and Safety Code section 481.120. TEX. HEALTH & SAFETY CODE ANN. § 481.120 (West 2017) (stating "a person commits an offense if the person knowingly or intentionally delivers marihuana"). Because delivery of marihuana is not an offense covered by section 481.113, it cannot be an "alternate method" for violating section 481.113.

To the extent that Nutt is arguing that "tetrahydrocannabinol" and "tetrahydrocannabinol, other than marihuana" are different controlled substances included under the Penalty Group 2 umbrella, the possession of an individual substance included in Penalty Group 2 constitutes a different statutory offense—not an alternate *method* of violating section 481.113. *See Watson v. State*, 900 S.W.2d 60, 62 (Tex. Crim. App. 1995); *see also Nichols v. State*, 52 S.W.3d 501, 503 (Tex. App.—Dallas 2001, no pet.).

Furthermore, Nutt did not argue in the trial court—and he is not arguing on appeal—that he did not have notice of the charge against him such that he could not

11

prepare an adequate defense, i.e., he did not know if he was being charged with delivering marihuana or tetrahydrocannabinol other than marihuana, or that he could be subject to the risk of being prosecuted twice for the same offense as a result of the alleged variance. Therefore, Nutt has not established that the alleged variance is material. *See Santana*, 59 S.W.3d at 194 (defendant has burden of proving materiality of variance). Accordingly, we hold that the evidence in this case is not legally insufficient due to a material variance.

Relying on the Court of Criminal Appeals 1979 opinion, *Few*, Nutt also argues that a charging instrument alleging possession of THC without more fails to allege an offense under state law—the felony offense of "tetrahydrocannabinols, other than marijuana" and that "because THC without more embraces marihuana, fails to state the elements essential to determine the jurisdiction of the court to try the case and the range of punishment which may be assessed." 588 S.W.2d at 585.

When *Few* was decided in 1979, substantive defects in an indictment deprived the trial court of jurisdiction and a conviction based on such an indictment was void and could be challenged at any time. *See Smith v. State*, 309 S.W.3d 10, 16–17 (Tex. Crim. App. 2010). The Texas Constitution, however, was amended in 1985 to define an indictment as "a written instrument presented to a court by a grand jury charging a person with the commission of an offense. . . . The presentment of an indictment or information to a court invests the court with jurisdiction of the cause." TEX.

12

CONST. art. V, § 12(b). As a result of this amendment, defects in an indictment, even substantive ones, no longer deprive the trial court of subject matter jurisdiction. *Kirkpatrick v. State*, 279 S.W.3d 324, 328–29 (Tex. Crim. App. 2009) (citing *Teal v. State*, 230 S.W.3d 172, 181–82 (Tex. Crim. App. 2007)). Now, a defendant must object to a substantive defect in an indictment before trial or else he forfeits his right to object to such defect on appeal or by collateral attack. TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005). The omission of an element of the charged offense is considered a substantive defect that must be objected to prior to trial. *See Smith v. State*, 309 S.W.3d 10, 18 (Tex. Crim. App. 2010). To the extent that Nutt is arguing that the indictment is defective because it does not allege an element of the offense, he did not file a motion to quash the indictment or otherwise complain before the trial began about the State's failure to allege an element of the charged offense and, therefore, he has waived this issue. *See id.*; TEX. CODE CRIM. PROC. ANN. art. 1.14(b).

Not only has the law changed since *Few* was decided, but *Few* is also distinguishable on its facts. Unlike in *Few*, the indictment in this case went beyond merely identifying the controlled substance at issue. Here, the indictment included additional identifying information, including the statute Nutt allegedly violated—Health and Safety Code section 481.113—and the amount of THC that Nutt allegedly delivered and sold—an amount equal to or greater than 4 grams but less

13

than 400 grams. The indictment also stated that the alleged offense was a first-degree felony.

Nutt also argues that the evidence was legally insufficient to prove that he violated section 481.113 because although Amen testified that the substance Officer Ocanas retrieved from Moorman contained some amount of THC and it had an aggregate weight of 4.48 grams, Amen could not say how much of the 4.48 grams was attributable to the THC, as opposed to other materials found in the substance. In order to prove that Nutt committed a first-degree felony offense under section 481.113(a) and (d), the State had to prove that Nutt delivered more than 4 grams but less than 400 grams of THC as measured "by aggregate weight, including adulterants or dilutants." TEX. HEALTH & SAFETY CODE ANN. § 481.113(d); *see also Williams v. State*, 936 S.W.2d 399, 405 (Tex. App.—Fort Worth 1996, writ ref'd). The State is not required to prove the amount of the controlled substance, absent any adulterants or dilutants, as Nutt suggests. Reviewing the evidence in the light most favorable to the verdict, we conclude that there is legally sufficient evidence because a rational trier of fact could have found that Nutt delivered more than 4 grams but less than 400 grams of THC to Moorman, as measured "by aggregate weight, including adulterants or dilutants." TEX. HEALTH & SAFETY CODE ANN. § 481.113(d); *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

We overrule Nutt's first issue.

14

## Admission of Evidence

In his second issue, Nutt argues that the trial court abused its discretion by admitting State's Exhibit 2 into evidence because the State failed to authenticate the exhibit.

Authentication of an item of evidence is a condition precedent to admissibility. TEX. R. EVID. 901(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). The requirement of authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015). In a jury trial, it is the jury's role ultimately to determine whether the evidence is what its proponent claims; "the preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the proffered evidence" is authentic. *Tienda*, 358 S.W.3d at 638.

Appellate review of a trial court's ruling on an authentication issue is for an abuse of discretion. *Id.* The trial court does not abuse its discretion by admitting evidence where it reasonably believes a reasonable juror could find that the evidence proffered is authentic. The trial court's ruling will be affirmed so long as it is within the "zone of reasonable disagreement." *Id.*

The trial court's erroneous admission of inadmissible evidence is considered harmless if, after examining the record as a whole, we are reasonably assured the error did not influence the jury verdict or had but a slight effect. *See* TEX. R. APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927–28 (Tex. Crim. App. 2004). Furthermore, any error in the admission of evidence is harmless when a trial court admits evidence of the same or similar character without objection. *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).

Rule 901 provides several nonexclusive, illustrative examples of sufficient authentication or identification, including direct testimony from a witness with personal knowledge and the presence of "distinctive characteristics, taken in conjunction with circumstances." TEX. R. EVID. 901; *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007). A video may also be authenticated through testimony that the "process or system that produced the video is reliable." *Standmire v. State*, 475 S.W.3d 336, 344 (Tex. App.—Waco 2014, pet. ref'd).[2] Under this method of authentication, the "sponsoring witness" generally "describes the type of system used for recording and whether it was working properly," and testifies that

---

[2] Although this method of authentication is "most often used when there is no witness that was present at the scene or event depicted" in the video, we have not found—and Nutt has not directed us to—authority prohibiting the authentication of a video in this manner when a witness with personal knowledge of the contents of the video is available to testify. *See generally Standmire v. State*, 475 S.W.3d 336, 344 (Tex. App.—Waco 2014, pet. ref'd).

he reviewed the video, removed the video or device that stores the recording, and the video has not been altered or tampered with. *Id.*

The State attempted to authenticate State's Exhibit 2 based on Officer Ocanas's personal knowledge and his testimony that the system used to make the recording was reliable. Officer Ocanas explained that State's Exhibit 2 was the audio and video recording taken by the camera hidden on Moorman's body during the controlled buy. Ocanas testified that the recording is a fair and accurate representation of the events depicted in the video based on his personal observations. Officer Ocanas has personal knowledge of the video's contents, including the portions of the video showing him instructing Moorman prior to the drug deal and retrieving the baggy from Moorman's vehicle after the drug deal. Officer Ocanas also observed Nutt walk up to Moorman's vehicle at the shop where the buy was planned to occur.

In addition, Officer Ocanas testified that Moorman's body camera was a device capable of making accurate recordings, he was competent to operate the camera, and he could identify all the voices captured by the recording. The officer further testified that he had reviewed the video recording, the recording had not been altered or changed in any manner, and it was a fair and accurate representation of events. He also confirmed that the events depicted in the recording were consistent with his personal observations.

According to Officer Ocanas, the camera was recording continuously from the time it was placed on Moorman's body prior to his meeting with Nutt until the officers retrieved it from Moorman after he purchased hashish from Nutt. The contents of the video support the officer's claim. In particular, the video shows Officer Ocanas giving instructions to Moorman prior to the buy, the inside of Moorman's vehicle as he drives to meet Nutt at the Brenham Saddle Shop, and portions of the shop. The video also shows Nutt, who is standing beside the passenger window of Moorman's vehicle, hand something to Moorman with one hand and take what appears to be cash from Moorman with his other hand. The video also records the brief exchange of pleasantries between Nutt and Moorman. The video also shows a baggy, Moorman driving to a new location, and Officer Ocanas retrieving the baggy at that location. The video's contents are also consistent with Moorman's description of events surrounding the drug deal.

In light of this evidence, the trial court could have reasonably believed that a reasonable juror could find that State's Exhibit 2 is authentic.

We overrule Nutt's second issue.

### Independent-Corroboration Instruction

In his third issue, Nutt argues that the trial court erred by failing to instruct the jury that Moorman's testimony had to be independently corroborated.

18

A defendant cannot be convicted of an offense under Chapter 481 on the testimony of a confidential informant "unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed." TEX. CRIM. PROC. CODE ANN. § 38.141(a). "When the State relies upon testimony that is required by statute to be corroborated, it is error for the trial court *not* to instruct the jury that the defendant cannot be convicted on such testimony unless there is other evidence tending to connect the defendant with the offense and that evidence showing only the commission of the offense is insufficient." *See Jefferson*, 99 S.W.3d at 793 (holding failure to instruct jury on requirement of corroboration of informant's testimony is error); *see also Simmons v. State*, 205 S.W.3d 65, 77 (Tex. App.—Fort Worth 2006, no pet.). The jury charge does not include an independent-corroboration instruction.

Because Nutt did not object to the charge, we may only reverse Nutt's conviction on this basis if we determine that he was egregiously harmed by the error. Under the "egregious harm standard," the omission of a corroborating-evidence instruction may be rendered harmless if other evidence than the testimony of the informant exists that fulfills the purpose of the instruction. *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). The purpose of the instruction is to inform the jury that it cannot use an informant's testimony unless it determines that other evidence exists connecting the defendant to the offense. *Id.* If other evidence exists,

19

the purpose of the instruction may have been fulfilled. *Id.*; *see also Simmons*, 205 S.W.3d at 77.

In this case, the drug deal between Moorman and Nutt was recorded on audio and video, it was observed at a distance by narcotics officers, and the audio of the transaction was transmitted directly to the officers. Officer Ocanas testified that Moorman arranged to purchase hashish from Nutt at the Brenham Saddle Shop, he and two other officers searched Moorman and his vehicle for drugs prior to the meeting with Nutt, and they equipped Moorman and his vehicle with surveillance devices used during the meeting. Officer Ocanas also followed Moorman to the shop and he watched Nutt walk up to Moorman's vehicle. Given the additional evidence linking Nutt to the charged offense, we cannot say that Nutt was egregiously harmed by the omission of the corroborating-evidence instruction.

We overrule Nutt's third issue.

## Charge Error

In his fourth issue, Nutt argues that the trial court erred by failing to instruct the jury that it had to find that Nutt knew that the substance he delivered to Moorman was not marihuana before it could find Nutt guilty of the charged offense. Nutt also argues that there is no evidence from which the jury could infer that he knew that the substance he was selling to Moorman was not marihuana.

The record reflects that the jury was instructed that it had to find that Nutt "knowingly" delivered "a controlled substance from Penalty Group 2, namely, tetrahydrocannabinol," before it could find Nutt guilty. The jury was also instructed that Penalty Group 2 includes "Tetrahydrocannabinols, *other than marihuana*." (emphasis added). There is extensive testimony regarding the noticeable and distinctive physical characteristics of hashish and marihuana. There is also testimony from Moorman that he initially tried to buy marihuana from Nutt and that Nutt told him that he did not have any marihuana and he offered to sell Moorman hashish instead. The jury could reasonably infer from this testimony that Nutt knew that the substance he sold to Moorman was not marihuana.

We overrule Nutt's fourth issue.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice


Panel consists of Chief Justice Radack and Justices Jennings, and Lloyd.

Do Not Publish.   TEX. R. APP. P. 47.2(b).

21